UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN CARFORA, SANDRA PUTNAM, and JUAN GONZALES, individually and as representatives of a class of similarly situated individuals,<br><br>    *Movants*,<br>v.<br><br>THE UNIVERSITY OF CHICAGO,<br><br>    *Respondent*. | Misc. No. 25-7971<br><br>**UNDERLYING ACTION PENDING**<br>*Carfora v. Tchrs. Ins. & Annuity Ass'n of Am.*, No. 1:21-CV-8384-KPF (S.D.N.Y.). |

**MOVANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL NON-PARTY THE UNIVERSITY OF CHICAGO'S COMPLIANCE WITH RULE 45 SUBPOENA *DUCES TECUM***

**CONTENTS**

Authorities ............................................................................................................................. ii
Introduction ........................................................................................................................... 1
Background ........................................................................................................................... 2
    I.    Factual Allegations of the Underlying Action ................................................. 2
    II.   Factual & Procedural Background with Respect to the Subpoena ................. 4
Legal Standards ..................................................................................................................... 6
Argument .............................................................................................................................. 7
    I.    The University of Chicago's process, or lack thereof, for monitoring TIAA's cross-selling is relevant. ................................................................................... 7
    II.   The Subpoena is not unduly burdensome. ...................................................... 9
Conclusion ........................................................................................................................... 11

# AUTHORITIES

**Cases**

*Alcon Vision, LLC v. Allied Vision Grp., Inc.*,
  2019 U.S. Dist. LEXIS 152073 (S.D.N.Y. Sep. 6, 2019) .......................................................... 11

*Architectural Iron Workers' Local No. 63 Welfare Fund v. Legna Installers Inc.*,
  No. 22-5757, 2023 U.S. Dist. LEXIS 66607 (N.D. Ill. Apr. 17, 2023) ...................................... 7

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*,
  262 F.R.D. 293 (S.D.N.Y. 2009) ................................................................................................ 9

*Carfora v. Tchrs. Ins. & Annuity Ass'n of Am.*,
  2024 U.S. Dist. LEXIS 97679 (S.D.N.Y. May 31, 2024) ...................................................... 2, 8

*Carfora v. Tchrs. Ins. & Annuity Ass'n of Am.*,
  631 F. Supp. 3d 125 (S.D.N.Y. 2022), *reconsideration granted in part*, No. 21-8384,
  2023 U.S. Dist. LEXIS 148435 (S.D.N.Y. Aug. 21, 2023) ........................................................ 2

*Coleman v. Illinois*,
  No. 19-3789, 2020 U.S. Dist. LEXIS 177020 (N.D. Ill. Sep. 25, 2020) .................................... 8

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
  974 F.2d 270 (2d Cir. 1992) ....................................................................................................... 4

*Donovan v. Bierwirth*,
  680 F.2d 263 (2d Cir. 1982) ....................................................................................................... 4

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ................................................................................................................... 4

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*,
  530 U.S. 238 (2000) ................................................................................................................... 4

*In re Subpoena*,
  No. 16-4619, 2016 U.S. Dist. LEXIS 72483 (N.D. Ill. June 3, 2016) ....................................... 7

*Last Atlantis Capital, LLC v. AGS Specialist Partners*,
  No. 04-0397, 2013 U.S. Dist. LEXIS 7044 (N.D. Ill. Jan. 17, 2013) ...................................... 10

*Linet Ams., Inc. v. Hill-Rom Holdings, Inc.*,
  No. 21-6890, 2025 U.S. Dist. LEXIS 63259 (N.D. Ill. Jan. 27, 2025) ...................................... 6

*N.W. Mem'l Hosp. v. Ashcroft*,
  362 F.3d 923 (7th Cir.2004) ....................................................................................................... 7

*Pac. Century Int'l, Ltd. v. Doe*,
  282 F.R.D. 189 (N.D. Ill. 2012) ................................................................................................. 9

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
  712 F.3d 705 (2d Cir. 2013) ....................................................................................................... 4

*Reed v. Wexford Health Sources, Inc.*,
  No. 20-01139, 2022 U.S. Dist. LEXIS 175230 (S.D. Ill. Sep. 27, 2022) .................................. 7

*Sberbank of Russia v. Traisman*,
  No. 14-216, 2016 U.S. Dist. LEXIS 113351 (D. Conn. Aug. 23, 2016) ................................... 9

*Tr. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*,
  843 F.3d 561 (2d Cir. 2016) .................................................................................................... 4

*Tresóna Multimedia, LLC v. Legg*,
  No. 15-4834, 2015 U.S. Dist. LEXIS 107723 (N.D. Ill. Aug. 17, 2015) ................................ 11

*Wi-LAN, Inc. v. LG Elecs., USA, Inc.*,
  2011 U.S. Dist. LEXIS 4606, 2011 WL 148058 (N.D. Ill. Jan. 18, 2011) ................................ 7

*Williams v. Blagojevich*,
  No. 05-4673, 2008 U.S. Dist. LEXIS 643, 2008 WL 68680 (N.D. Ill. Jan. 2, 2008) .............. 10

**Statutes**

29 U.S.C. § 1001(a) ........................................................................................................................ 4

29 U.S.C. § 1002(7) ........................................................................................................................ 4

29 U.S.C. § 1104(a)(1)(A)–(B) ....................................................................................................... 4

29 U.S.C. § 1132(a)(2) .................................................................................................................... 4

29 U.S.C. § 1132(a)(3) .................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 26(b)(1) ........................................................................................................... 6, 7, 8

Fed. R. Evid. 401 ............................................................................................................................ 8

## INTRODUCTION

Pursuant to Federal Rules of Civil Procedure 37 and 45 and Rule 37.2 of the Local Rules, Movants John Carfora, Sandra Putnam, and Juan Gonzales move to compel The University of Chicago to produce documents in compliance with the subpoena *duces tecum* Movants issued under Rule 45 to nonparty the University of Chicago (Ex. 1, the "Subpoena"). Movants are plaintiffs in the underlying case, *Carfora v. Teachers' Insurance & Annuity Association of America*, No. 1:21-CV-8384-KPF (S.D.N.Y.) (the "Underlying Action").

The documents sought are directly relevant to allegations (which the district court has already found plausible to withstand a motion to dismiss) that certain retirement Plan Sponsors breached their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") by failing to monitor imprudent and disloyal cross-selling efforts by Teachers' Insurance & Annuity Association of America and TIAA-CREF Individual & Institutional Services, LLC (collectively, "TIAA" or "Defendants").

Whether the documents requested in the Subpoena show that the University of Chicago breached its fiduciary duties owed to its plan participants by allowing TIAA to engage in unfettered cross-selling to participants, or instead show that the University of Chicago took actions to monitor, restrict, and oversee TIAA's cross-selling consistent with its fiduciary duties, the documents are relevant to the allegations at issue in the Underlying Action and should be produced. The University of Chicago has not identified any undue burden or other objection to the Subpoena that would justify prohibiting discovery of highly relevant information, and its compliance with the Subpoena should be compelled.

1

## BACKGROUND

**I.  Factual Allegations of the Underlying Action**

The Underlying Action commenced on October 11, 2021. *TIAA*, ECF No. 1.[1] Movants, individually and on behalf of a proposed nationwide class of all participants in TIAA-recordkept defined contribution retirement plans, allege that TIAA knowingly participated in breaches of fiduciary duty by the sponsors of those plans in violation of ERISA. *See Carfora v. Tchrs. Ins. & Annuity Ass'n of Am.*, 631 F. Supp. 3d 125 (S.D.N.Y. 2022) ("*TIAA I*"), *reconsideration granted in part*, No. 21-8384, 2023 U.S. Dist. LEXIS 148435 (S.D.N.Y. Aug. 21, 2023) ("*TIAA II*"); *Carfora v. Tchrs. Ins. & Annuity Ass'n of Am.*, 2024 U.S. Dist. LEXIS 97679 (S.D.N.Y. May 31, 2024) ("*TIAA III*").

Movants are current participants in ERISA-governed defined-contribution retirement plans sponsored or administered by their employers, almost all of which are educational institutions. *TIAA III*, 2024 U.S. Dist. LEXIS 97679, at *3. TIAA "contracts with the Plan Sponsors['] plans to provide administrative services, including recordkeeping for the Plan Sponsors, as well as investment-related services." *Id.* at *3–4. TIAA's services to plans include "assembling TIAA-affiliated investment options in which plan participants can invest, as well as individual advisory services for plan participants." *Id.* at *4 (internal quotation marks omitted) (alteration adopted). At the heart of this dispute are allegations concerning TIAA's "'Portfolio Advisor,' a managed account program that places the plan participant in a model portfolio that often include[s] TIAA-affiliated funds, and provides ongoing investment advice that rebalances the assets if the account

---

[1] Citations to the docket in the Underlying Action are styled as "*TIAA*, ECF No. __." The Underlying Action is pending before the Honorable Katherine Polk Failla, United States District Court for the Southern District of New York, and is styled as *Tchrs. Ins. & Annuity Ass'n of Am.*, No. 21-CV-8384 (KPF) (S.D.N.Y.).

2

deviates from the model portfolio allocation by a certain amount." *Id.* (citing *TIAA*, ECF No. 71 ¶¶ 29–30; Ex. 5 ¶¶ 29–30)

Not only did TIAA charge Movants multiple layers of fees for their services, but TIAA also effectuated a "cross-selling" scheme whereby it incentivized its employees to sell its non-plan TIAA products and services, including Portfolio Advisor, to Plan participants at TIAA-recordkept organizations and institutions across the country. *See id.* at *5–7. This scheme caused TIAA to reap "a 20-fold increase in its annual revenues generated from assets rolled over to Portfolio Advisor," with revenues increasing "from $2.6 million to $54 million in the period from 2013 to 2018." *Id.* at *9 (citing *TIAA*, ECF No. 71 ¶ 131; Ex. 5 ¶ 131).

Had Plan Sponsors discharged their statutorily defined ERISA duties adequately, they "would have identified the cross-selling activities" that Movants allege to be unlawful. *Id.* at *9 (citing *TIAA*, ECF No. 71 ¶¶ 131–41; Ex. 5 ¶¶ 131–41). Among other things, prudent Plan Sponsors would have required TIAA to issue "corrective disclosures to mitigate problematic elements of TIAA's cross-selling campaign," or Plan Sponsors would have reevaluated TIAA's "compensation as a service provider," discovering TIAA's significant plan-related revenue stream. *Id.* Accordingly, internal Plan Sponsor communications concerning TIAA's scheme—to the extent that they exist and are presently within a Plan Sponsor's possession, custody, or control—are directly relevant and essential to proving Movants' claims in the Underlying Action. Indeed, the Amended Civil Case Management Plan filed in the Underlying Action expressly allowed for an extended discovery period due to the "unique complexity" of the parties' claims and defenses, "which require significant third-party discovery related to the alleged breaches of fiduciary duties by thousands of defined contribution plans." *TIAA*, ECF No. 103 ¶ 19c.

3

"ERISA's central purpose is to protect beneficiaries of employee benefits plans." *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 715 (2d Cir. 2013) ("*PBGC*"); *see* 29 U.S.C. § 1001(a)–(b). The statute achieves that objective by imposing upon plan fiduciaries "strict standards of trustee conduct . . . derived from the common law of trusts—most prominently, a standard of loyalty and a standard of care." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 416 (2014); *see* 29 U.S.C. § 1104(a)(1)(A)–(B). ERISA's fiduciary duties are "the highest known to the law." *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982).

Plan participants, like Movants here, have a right of action to enforce ERISA's fiduciary obligations. *See* 29 U.S.C. § 1132(a)(2), (a)(3).[2] A non-fiduciary can be held liable for knowingly participating in a fiduciary breach. *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000) (there is "no limit . . . on the universe of possible defendants" under § 1132(a)(3)). Thus, a non-fiduciary who "knowingly participates" in an ERISA fiduciary's violation is subject to liability under § 1132(a)(3). *Id*. at 248–49. "The well-settled elements of a cause of action for participation in a breach of fiduciary duty are [i] a breach by a fiduciary of a duty owed to plaintiff, [ii] defendant's knowing participation in the breach, and [iii] damages." *Tr. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 571 (2d Cir. 2016) (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 281–82 (2d Cir. 1992)).

## II.     Factual & Procedural Background with Respect to the Subpoena

On February 18, 2025, Movants caused the Subpoena to be served on the University of Chicago. Ex. 2. Per the Subpoena's Instructions, documents produced by the University of Chicago "shall be subject to the Protective Order that governs th[e] Action (ECF No. 88 (enclosed)) and produced in accordance with the provisions of the ESI Stipulation (ECF No. 87)." Ex. 1,

---

[2] The term "participant" means "any employee or former employee of an employer … who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7).

4

Instructions ¶ 7; Ex. 3 (the "Protective Order"). The Subpoena included two requests:

1. Documents relating to TIAA promoting and selling its Non-Plan Products or Services to the Plan's participants, including but not limited to the following:

(a) Documents relating to your analysis, review, or monitoring of TIAA's sales or promotion of Non-Plan Products or Services to participants in the Plan;

(b) Documents relating to any advice you received regarding the sale of Non-Plan Products or Services to participants in the Plan;

(c) Documents relating to any request or direction you transmitted to TIAA concerning Financial Consultants' ability to market or otherwise promote Non-Plan Products or Services to participants in the Plan;

(d) Documents relating to your consideration of TIAA's revenue from the sale of Non-Plan Products or Services to participants when evaluating or negotiating the Plan's recordkeeping fees;

(e) Documents relating to transfers of Plan assets into Non-Plan Products or Services (including, but not limited to, individual retirement accounts), including all non-taxable distribution reports requested for the Plan;

(f) Documents relating to your knowledge of any incentive compensation or other benefit available to Financial Consultants for selling Non-Plan Products or Services to participants in the Plan; and

(g) Documents relating to any recommendation or proposal that TIAA be allowed to use or prevented from using participant data for any purpose other than as needed to carry out its function as the Plan's service provider.

2. All recordkeeping or custodial agreements with TIAA for the Plan.

Ex. 1 at 9. The phrase "Non-Plan Products or Services" was defined as "all products or services offered by TIAA outside of a retirement plan," including "private asset management, individual wealth management, Portfolio Advisor, retail mutual funds, retail annuities, insurance, and individual retirement products." *Id*. at 5.

On March 19, 2025, the University of Chicago served its objections to the Subpoena, discussed further below. Ex. 4 (the "Objections"). Movants' counsel met and conferred with counsel for the University of Chicago on multiple occasions regarding the Subpoena, emphasizing that Movants did not intend to duplicate party discovery or seek to impose undue burden or expense on the University of Chicago. *See* Declaration of Patrick R. Kutz ("Kutz Decl.") ¶ 7. However, Movants never received a counterproposal from the University of Chicago with respect to its obligations under the Subpoena. *Id.*

## LEGAL STANDARDS

Rule 45 of the Federal Rules of Civil Procedure permits a party to a civil action to file a subpoena commanding a non-party "to produce documents, electronically stored information, or tangible things." *Linet Ams., Inc. v. Hill-Rom Holdings, Inc.*, No. 21-6890, 2025 U.S. Dist. LEXIS 63259, at *3 (N.D. Ill. Jan. 27, 2025). The scope of discovery under Rule 45 is as broad as permitted under the rules of discovery under Rule 26(b)(1), which allows discovery:

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, … the parties' relative access to relevant information, … the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

*Id.* at *3–4 (quoting Fed. R. Civ. P. 26(b)(1))

Further, relevant information within the scope of the subpoena need not be admissible in evidence to be discoverable if the discovery "appears reasonably calculated to lead to the discovery of admissible evidence." *Reed v. Wexford Health Sources, Inc.*, No. 20-01139, 2022 U.S. Dist.

6

LEXIS 175230, at *7 (S.D. Ill. Sep. 27, 2022) (citing *N.W. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930 (7th Cir.2004) (quoting Fed. R. Civ. P. 26(b)(1))). Once the movant establishes that the subpoena seeks relevant information that is proportional to the needs of the case, the burden then shifts to the party opposing discovery to demonstrate that an undue burden exists. *Architectural Iron Workers' Local No. 63 Welfare Fund v. Legna Installers Inc.*, No. 22-5757, 2023 U.S. Dist. LEXIS 66607, at *12 (N.D. Ill. Apr. 17, 2023) (citing *Nw. Mem'l. Hosp.*, 362 F.3d at 927); *see also Wi-LAN, Inc. v. LG Elecs., USA, Inc.*, 2011 U.S. Dist. LEXIS 4606, 2011 WL 148058, at *2 (N.D. Ill. Jan. 18, 2011).

The moving party must show that the "burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it." *Id*. When determining whether a burden is undue, the court considers the "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues," and determines "whether the burden or expense of the proposed discovery outweighs its likely benefit." *In re Subpoena*, No. 16-4619, 2016 U.S. Dist. LEXIS 72483, at *12 (N.D. Ill. June 3, 2016) (citing Fed. R. Civ. P. 26(b)(1)).

**ARGUMENT**

I.  **The University of Chicago's process, or lack thereof, for monitoring TIAA's cross-selling is relevant.**

The records that the Subpoena seeks—documents regarding the University of Chicago's process, or lack thereof, for monitoring TIAA's cross-selling—are relevant to Movants' claims. The University of Chicago also cannot meet its burden to demonstrate any undue burden. *See Architectural Iron Workers'*, 2023 U.S. Dist. LEXIS 66607, at *12 (citing *Nw. Mem'l. Hosp.*, 362 F.3d at 927).

Information is discoverable if it is "relevant to any party's claim or defense and proportional to the needs" of the Underlying Action. *Coleman v. Illinois*, No. 19-3789, 2020 U.S. Dist. LEXIS 177020, at *8 (N.D. Ill. Sep. 25, 2020) (citing Fed. R. Civ. P. 26(b)(1)). Evidence is relevant if it "has any tendency to make a fact of consequence more or less probable than it would be without the evidence. *Id*. (quoting Fed. R. Evid. 401)). Rule 401 does not set a high bar for characterizing evidence as relevant as it only requires "minimal logical relevancy." *Id*. (internal citation omitted). "The item of evidence need not, by itself, persuade the trier of fact, that the fact to be inferred is more probably true than not true." *Id*.

> The proposed Class in the Underlying Action is defined as:
>
> All participants of defined contribution plans subject to ERISA who (i) initiated a rollover of assets from the participant's individual plan account to any non-plan product or service affiliated with TIAA or TIAA Services at any time between January 1, 2012 and the date of judgment, (ii) for which a TIAA Services Wealth Management Advisor received credit toward an annual variable bonus under TIAA's incentive compensation plan. Excluded from the class are participants of any plan sponsored by TIAA or its affiliates.

*TIAA*, ECF No. 71 ¶ 157; Ex. 5 ¶ 157 ("Second Amended Complaint"). The court in the Underlying Action has held that the Second Amended Complaint plausibly alleges that all plans within the class breached their fiduciary duties by failing to monitor TIAA's cross-selling. *TIAA III*, 2024 U.S. Dist. LEXIS 97679, at *9. In its Objections, The University of Chicago does not dispute that it sponsors a defined contribution plan subject to ERISA, or that the plan was recordkept by TIAA. Ex. 4; Ex. 1 at Definitions ¶ 7. Nor does it dispute that participants rolled assets out to TIAA products. *Id.* Accordingly, documents about the University of Chicago's process, or lack thereof, for monitoring TIAA cross-selling are clearly relevant to Movants' allegations that certain plan sponsors "were unaware of TIAA's cross-selling campaign, and took no action to address its

8

problematic elements." *TIAA III*, 2024 U.S. Dist. LEXIS 97679, at *8 (citing *TIAA*, ECF No. 71 ¶¶ 116–17; Ex. 5 ¶¶ 116–17).

Movants allege that the plan sponsors' "ignorance and inaction" was tantamount to a breach of their ERISA obligation to monitor the activities of a fiduciary delegee and had the plan sponsors discharged their statutory duty of prudence adequately, the plan sponsors "would have identified [TIAA's] cross-selling activities." *Id.*, at *9 (citing *TIAA*, ECF No. 71 ¶¶ 125–30; Ex. 5 ¶¶ 125–30). Movants further allege that to satisfy their fiduciary obligations, the plan sponsors needed "to require corrective disclosures to mitigate problematic elements of TIAA's cross-selling campaign, or to potentially reevaluate TIAA's compensation as a service provider to the ERISA plans." *Id.* (citing *TIAA*, ECF No. 71 ¶¶ 131–41; Ex. 5 ¶¶ 131–41).

Documents showing that the University of Chicago took these sorts of steps will be relevant to establish the fiduciary standard. On the other hand, if the records reveal that no prophylactic or remedial measures were taken, the documents will be relevant to establish a fiduciary breach. Moreover, as the underlying court recognized, TIAA will endeavor to "rebut the alleged downside of its cross-selling activities and maintain that such a practice was consistent with its other services offered to the Plan Sponsors." *Id.*, at *29. Therefore, information regarding the University of Chicago's fiduciary process is also relevant to TIAA's defenses.

**II.     The Subpoena is not unduly burdensome.**

Because the requested information is relevant, it is the University of Chicago's burden "to show that compliance with the subpoena will prove burdensome." *Sberbank of Russia v. Traisman*, No. 14-216, 2016 U.S. Dist. LEXIS 113351, at *3 (D. Conn. Aug. 23, 2016) (citing *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009)). "When making that inquiry, the court should consider 'the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the

9

proposed discovery in resolving the issues.'" *Pac. Century Int'l, Ltd. v. Doe*, 282 F.R.D. 189, 193 (N.D. Ill. 2012) (citing *Williams v. Blagojevich*, No. 05-4673, 2008 U.S. Dist. LEXIS 643, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008)). A court may also consider "the person's status as a non-party, the relevance of the discovery sought, the subpoenaing party's need for the documents, the breadth of the request and the burden imposed on the subpoenaed party." *Last Atlantis Capital, LLC v. AGS Specialist Partners*, No. 04-0397, 2013 U.S. Dist. LEXIS 7044, at *7 (N.D. Ill. Jan. 17, 2013) (internal citations omitted).

The University of Chicago has not identified any undue or substantial burden required to comply with the Subpoena. *See* Ex. 4. In its Objections, the University of Chicago states generally that (1) the time frame requested (October 2014 to the present) is unduly burdensome, (2) that its status as a non-party means Movants can secure information from other less burdensome sources such as TIAA, and (3) that seeking internal University of Chicago communications is somehow unduly burdensome and not proportional to the needs of the case. *See* Ex. 4 at 2–3.

The Subpoena contains two document requests, both directly relevant to Movants' claims and materials that should be readily available in the University of Chicago's fiduciary file, if they exist. Ex. 1 (requesting documents related to (1) TIAA's cross-selling and (2) the plan's recordkeeping contracts with TIAA). Additionally, Movants offered to consider a counter-proposal from the University of Chicago that would have limited the scope of its obligations under the Subpoena. Kutz Decl. ¶ 7. The University of Chicago refused to produce any documents or offer a counterproposal to limit the scope of its obligations under the Subpoena. Kutz Decl. ¶ 7. Accordingly, the University of Chicago should be directed to produce all materials within its possession, custody, or control that are responsive to the Subpoena.

The fact that the University of Chicago is a non-party to the Underlying Action does not affect its obligation to comply with the Subpoena, because the documents sought are relevant and do not impose an undue burden. The limited authorities relied upon by the University of Chicago in its Objections (Ex. 4 at 3–4) relate to instances where compliance with a non-party subpoena was quashed because the subpoena at issue requested information readily available and already requested from a party to the litigation. *See Tresóna Multimedia, LLC v. Legg*, No. 15-4834, 2015 U.S. Dist. LEXIS 107723, at *13 (N.D. Ill. Aug. 17, 2015); *Alcon Vision, LLC v. Allied Vision Grp., Inc.*, 2019 U.S. Dist. LEXIS 152073, at *4 (S.D.N.Y. Sep. 6, 2019). As Movants have emphasized to Defendants, they are seeking only documents that cannot be obtained from TIAA.

## CONCLUSION

For the above reasons, the Motion should be granted.

Dated: July 14, 2025

By: /s/ Joel D. Rohlf
Joel D. Rohlf, Illinois Bar No. 6322951
100 South Fourth Street, Ste. 1200
Saint Louis, Missouri 63102
Telephone: (314) 621-6115
Facsimile: (314) 621-5934
jrohlf@uselaws.com

*Counsel for Movants Individually & as Representatives of the Proposed Class*